**UNITED STATES of America, Appellee,**

v.

**Edgardo RESTO, Defendant–Appellant.**

**No. 1628, Docket 94–1678.**

United States Court of Appeals, Second Circuit.

Argued June 8, 1995.

Decided Jan. 3, 1996.

---

Jane S. Smith, New York City (Larry J. Silverman, New York City, of counsel), for Defendant–Appellant.

Lisa Fleischman, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney, Peter A. Norling, Assistant United States Attorney, E.D.N.Y., Brooklyn, NY, of counsel), for Appellee.

Before: OAKES, MINER and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

Edgardo Resto appeals from a judgment of the United States District Court for the Eastern District of New York (Raggi, J.), convicting him, after a plea of guilty, of possessing cocaine with the intent to distribute it, in violation of 21 U.S.C. § 841(a). Resto was sentenced primarily to sixty months in prison and five years supervised release. He appeals his sentence, arguing that the district court erred by: (1) failing to enforce a cooperation agreement that he had entered into with the government, pursuant to which—after providing substantial assistance—he was to have received the benefit of a letter from the government to the court allowing the court to sentence him below the statutory minimum five year prison term and the applicable guidelines range (a "Departure Letter"), see 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1; and (2) failing to apply the "escape valve" provisions of 18 U.S.C. § 3553(f) to sentence him within the guidelines range but below the statutory mandatory minimum sentence. We affirm.

### Background

Resto was arrested in Jacksonville, Florida on February 5, 1993, after purchasing 4.48 kilograms of cocaine from a government informant. At the time of his arrest, he had instructions to deliver the cocaine to William Aranaga–Rojas in Queens, New York. Resto agreed to cooperate with government agents, and accompanied them to New York. On February 8, 1993, he participated in the controlled delivery of the cocaine to Aranaga, which resulted in Aranaga's arrest. Thereafter, Resto was indicted in the United States District Court for the Middle District of Florida on one count of possessing cocaine with the intent to distribute it. He was released on bail, and allowed to return to his home state of Connecticut.

The government intended to have Resto testify at Aranaga's trial, and began to prepare him. On May 3, 1993, two days before the trial was scheduled to begin, Resto signed a cooperation agreement with the government. He agreed to plead guilty to the drug possession offense, and to cooperate with the government. Resto also promised not to give "false, misleading or incomplete information" or to "commit[ ] or attempt[ ] to commit any further crimes." In return, the government agreed that, if it determined that Resto met his obligations, it would file a motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), allowing the court to impose a sentence below the guidelines range and statutorily prescribed mandatory minimum. The government also agreed not to oppose a downward adjustment of three offense level points for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

Aranaga pled guilty on the morning of the trial. As a result, Resto was never called upon to testify. After his case was transferred from the Middle District of Florida to the Eastern District of New York, he appeared before the district court on August 4, 1993. The court delayed sentencing for preparation of a pre-trial services report to help assess his bail conditions.

Resto was then interviewed by a pre-trial services officer. In the course of this assessment, the officer conducted a computerized fingerprint search. This investigation revealed that Resto had failed to disclose eleven earlier arrests under various aliases relating to casino fraud, even though federal agents had asked him about his past criminal history on several occasions: first, just before the controlled delivery to Aranaga; second, at the time of his release on bail in Florida; and again, in the course of

preparing him to testify at Aranaga's trial. When the officer confronted Resto with this information, he once more denied the prior arrests. Shortly thereafter, he fled the courthouse. Resto remained at large until January 5, 1994, when he was arrested in New Jersey, again on charges of casino fraud.

On March 12, 1994, Resto pled guilty to the original Florida indictment. Prior to the time of his plea, the government made clear its view that Resto had breached the cooperation agreement, and that it did not intend to file a Departure Letter allowing the court to relieve him of the mandatory minimum and the guidelines range.

The amended presentence report recommended a total offense level of 25,[1] and a criminal history category of III.[2] This resulted in a guidelines sentencing range of 70 to 87 months. Because of the quantity of cocaine involved, Resto was in any event subject to a five year mandatory minimum sentence. *See* 21 U.S.C. § 841(b)(1)(B)(ii).

At sentencing, the district court found that under the circumstances the government was not obliged by the terms of the cooperation agreement to provide a Departure Letter. The district court also found inapplicable the "safety valve" exception, 18 U.S.C. § 3553(f), which permits a sentencing court to disregard statutorily imposed mandatory minimum sentences where, *inter alia*, an offender has no more than one criminal history point as determined under the guidelines. However, the court found that a criminal history category of III overrepresented Resto's past criminal conduct. Judge Raggi therefore departed from the guidelines and treated Resto as if he had a criminal history category of I, resulting in a guidelines sentence of 57 to 71 months. The district court then sentenced Resto within this range, to the mandatory minimum of five years.

*Discussion*

## I. The Cooperation Agreement

Resto argues that the district court erred by failing to find that the government breached the cooperation agreement by refusing to file a Departure Letter. His contention has no merit. The agreement provided that Resto would give "truthful, complete and accurate information, and [would] cooperate fully with [the government]." The agreement further provided that if the government determined Resto had "cooperated fully, provided substantial assistance to law enforcement authorities and otherwise complied with the terms of [the] agreement, [it would]' file a motion pursuant to Guidelines Manual § 5K1.1 and Title 18 United States Code 3553(e)." The agreement made clear that "the [government's] assessment of the value, truthfulness, completeness and accuracy of the cooperation" were "binding" on Resto. In addition, it stated that in the event the government determined that Resto had "intentionally given false, misleading or incomplete information or testimony, or [had] committed or attempted to commit any further crimes," the government would be released from its obligations.

▮ The terms of the agreement, therefore, make it unambiguous that the government had considerable discretion whether to move for a downward departure, based in part on its assessment of Resto's truthfulness and his remaining free of criminal activities. We have examined claims relating to a prosecutor's decision not to move for a downward departure pursuant to similarly worded cooperation agreements many times in the past. Prosecutors have broad latitude under such circumstances. *See, e.g., United States v. Knights,* 968 F.2d 1483, 1487 (2d Cir.1992); *United States v. Rexach,* 896 F.2d 710, 713 (2d Cir.), *cert. denied,* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990). "Because the

---

**1.** Starting from a base offense level of 30, the presentence report recommended a four level reduction for Resto's limited role in the offense, a three level reduction for acceptance of responsibility, and a two level increase for obstruction of justice in fleeing the courthouse when the deception as to his prior criminal history was discovered.

**2.** Resto's prior convictions on gambling fraud offenses resulted in four criminal history points, the minimum necessary for a criminal history category of III. *See* U.S.S.G. Ch. 5 Pt. A.

prosecution often is in the best position to evaluate the quality of a defendant's cooperation and to decide whether to make a substantial-assistance motion, this decision, like other prosecutorial determinations, may be subject to only limited review." *Knights,* 968 F.2d at 1487.

■ We recognize that the prosecutor's discretion is not unfettered. "[W]here the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith." *United States v. Khan,* 920 F.2d 1100, 1105 (2d Cir.1990), *cert. denied,* 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991); *see also United States v. Kaye,* 65 F.3d 240, 243 (2d Cir.1995); *United States v. Hon,* 17 F.3d 21, 25 (2d Cir.1994); *Knights,* 968 F.2d at 1487; *United States v. Agu,* 949 F.2d 63, 67 (2d Cir.1991), *cert. denied,* 504 U.S. 942, 112 S.Ct. 2279, 119 L.Ed.2d 205 (1992). And the government's decision may, of course, never be based on unconstitutional motives, relating, for example, to the race or religion of the defendant. *Wade v. United States,* 504 U.S. 181, 185–86 (1992); *Kaye,* 65 F.3d at 243.

Resto makes no claim that the government's decision not to move for a downward departure was motivated by unconstitutional considerations. His arguments that the government's decision was unfair or in bad faith are unavailing.

■ Resto suggests first that the agreement is ambiguous as to the time period in which it requires him to avoid further crimes and provide truthful information. Specifically, he argues that the agreement can be read to control his behavior only during the time and in the course of his assistance to the government. This ambiguity, he contends, should be construed in his favor. Resto's reading is unpersuasive. Nothing suggests that his obligation to comply with the law was limited to that narrow period of time during which he actively cooperated with the government, nor that his obligation of truthfulness related only to his statements about others. Indeed, Resto's truthfulness about his own past conduct was highly relevant to

the quality of his cooperation. Had the government actually gone to trial against Aranaga, a surprise revelation by the defense as to Resto's criminal past would have substantially injured the prosecution's case.

■ Resto argues second that his failure to reveal his criminal history cannot constitute a breach of the cooperation agreement since the deception came prior to the time that the agreement was signed. This claim, too, is unavailing. The agreement states that the government will be released from its obligation upon determining that "the defendant *has* failed to cooperate fully, or *has* intentionally given false … information." (emphasis added). Nothing suggests that a deception by Resto is relevant only if made after the consummation of the agreement. In any event, his lies to the pre-trial services officer came after the plea agreement was signed.

■ Drawing upon a comment made by the prosecuting attorney at a pre-sentencing hearing, Resto makes an additional argument. When he initially appeared for sentencing before the district court on August 4, 1993, the court deferred accepting his plea, deciding to wait for the preparation of the pre-trial services report on his bail status that ultimately revealed his deception. In the course of that hearing, the prosecutor stated that, as Aranaga had pled guilty, "[t]he cooperation that [Resto] was supposed to give has essentially been completed, he is continuing to cooperate with the government but we are ready at this time to give him a 5K letter."

Resto argues that this statement constituted an oral modification of the cooperation agreement, pursuant to which the government conceded his substantial assistance and promised to move for a downward departure. This claim is without merit. These remarks did no more than report the prosecutor's current assessment of Resto's situation. They did not purport to change the agreement. The cooperation agreement makes clear that any modifications to it were to be written and signed by all parties. Further-

more, there is no indication that Resto relied on these comments in any way.[3]

■ Finally, Resto contends that, by requiring him to reveal his criminal history, the cooperation agreement would have compelled him to give up his Fifth Amendment privilege against self-incrimination. His argument has no merit. He entered into the agreement voluntarily, electing to give up his privilege (to a limited extent) in exchange for the benefits of the agreement. To the extent he gave up constitutional rights, he did so voluntarily. There was no compulsion and thus no violation of his rights. *See United States v. Lawrence*, 918 F.2d 68, 72 (8th Cir.1990), *cert. denied*, 499 U.S. 941, 111 S.Ct. 1399, 113 L.Ed.2d 455 (1991).

■ The government's decision not to move for a downward departure was fair, and the prosecutor made it in good faith. Certainly Resto did provide some help to the government, assisting in the arrest and conviction of Aranaga. However, he repeatedly lied about his past criminal history, both before and after entering into the cooperation agreement, in violation of his promise to "provide truthful, complete and accurate information." In addition, he violated his agreement not to commit further crimes. His flight from the courthouse and failure to appear for sentencing, although never prosecuted, constituted the crime of bail-jumping. *See* 18 U.S.C. § 3146. And he was finally apprehended in the course of committing a further offense. In *Rexach* we explained, "where the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the judgment of the prosecutor, the prosecutor may reject the defendant's performance provided he or she is honestly dissatisfied." *Rexach*, 896 F.2d at 713. There can be no doubt that Resto breached the agreement, and that the prosecutor had ample, good faith grounds to decline to move for a downward departure.

## II. *The "Safety Valve" Exception*

Resto contends that under 18 U.S.C. § 3553(f), the sentencing judge should have been free to sentence him below the mandatory minimum. The guideline range applied by the district judge to Resto's offense was 57 to 71 months. Section 841(b)(1)(B)(ii) of Title 21 U.S.Code provided for a mandatory minimum sentence of 60 months imprisonment. Judge Raggi sentenced Resto to 60 months, noting that, absent the statutory minimum, she might have given him a lesser sentence within the guidelines range. Resto contests Judge Raggi's determination that the mandatory minimum statute applies, arguing that he falls within the "safety valve" exception for defendants with limited criminal histories. *See* 18 U.S.C. § 3553(f)(1). We find that Judge Raggi properly interpreted the statute.

■ The "safety valve" provision, recently enacted as a part of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796 (1994) (codified at 18 U.S.C. § 3553(f)), permits a defendant to be sentenced below statutory mandatory minimums that would otherwise apply if "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines," 18 U.S.C. § 3553(f)(1), and the defendant meets other qualifications. In such circumstances, the statute provides that the court "shall impose

---

**3.** Resto cites in his support *United States v. Martin*, 25 F.3d 211 (4th Cir.1994), in which the Fourth Circuit held that the government's comments at sentencing to the effect that it intended to make a substantial assistance motion "within the year" constituted a binding, oral modification of the plea agreement that "required the government to make a *timely* substantial assistance motion." *Id.* at 217. As we read that decision, it rests not on the government's statement, but on the court's view that the defendant had fully performed in the manner expected of him, a position that the government supported on appeal. Notwithstanding the *Martin* court's emphasis on the government's courtroom decla-

ration, we doubt that case would have come out differently absent the government's statement. Here, in contrast, it is clear that although the Assistant was at first unaware of the fact, Resto never complied with the cooperation agreement. *Martin*'s quite different circumstances distinguish the case. *See id.* at 217 n. 4 (noting that "parties' obvious willingness to modify orally the plea agreement" and the "special circumstance of a mutually agreed upon modification made in open court" should not be taken to undermine "commitment to the general rule that integrated written plea agreements are not open to oral supplementation").

a sentence pursuant to [the] guidelines ... without regard to any statutory minimum sentence." 18 U.S.C. § 3553(f).

■ By reason of his prior convictions, Resto had four criminal history points, placing him in Criminal History Category III. Judge Raggi, however, determined that this overstated his criminal history, and hence granted him a downward departure—from Criminal History Category III, to Category I—pursuant to U.S.S.G. § 4A1.3. Category I is defined to include only those defendants who have zero or one criminal history points. *See* U.S.S.G. Ch. 5 Pt. A. Resto argues that, notwithstanding his four criminal history points, he should be found to come within the specifications of § 3553(f) because, by downward departure, Judge Raggi treated him as if he had only one criminal history point.

We find that Judge Raggi interpreted the statute correctly in denying its benefit to Resto. Section 3553(f) states that the safety-valve provision is to apply *only* where "the defendant does not have more than 1 criminal history point, *as determined under the sentencing guidelines.*" 18 U.S.C. § 3553(f)(1) (emphasis added).

Furthermore, U.S.S.G. § 5C1.2, written by the Commission to interpret § 3553(f), similarly provides that, to be eligible for the safety valve provision, the defendant must have "[no] more than 1 criminal history point, as determined under the sentencing guidelines." U.S.S.G. § 5C1.2(1). The commentary that accompanies the guideline interprets this passage to mean "more than one criminal history point as determined under § 4A1.1 (Criminal History Category)." U.S.S.G. § 5C1.2 comment. (n. 1). Section 4A1.1 is the schedule that specifies how a sentencing court should calculate a defendant's criminal history points. It is not disputed that Resto has four criminal history points, as determined under § 4A1.1. Notwithstanding that the sentencing judge elected to depart by treating Resto as falling in Criminal History Category I, rather than Category III where his four points originally placed him, he nonetheless has four criminal history points. He is thus ineligible for the safety valve provision of § 3553(f).

We therefore find no error in the district court's determination that the five year mandatory minimum sentence applies to Resto.

### *Conclusion*

For the reasons stated above, the judgment of the United States District Court for the Eastern District of New York is affirmed.