**UNITED STATES of America, Appellee,**

v.

**Rafael A. FERNANDEZ, aka "Rafa",**
**Defendant–Appellant.**

**No. 1592, Docket 96–1673.**

United States Court of Appeals,
Second Circuit.

Argued June 4, 1997.

Decided Oct. 10, 1997.

Adria De Landri, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney for the Southern District of New York, Robert E. Rice, Assistant United States Attorney, New York City, on the brief), for Appellee.

Michael M. Milner, New York City (Emily R. Daniel, Milner & Daniel, New York City, on the brief), for Defendant–Appellant.

Before: NEWMAN, KEARSE, and CALABRESI, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Rafael A. Fernandez appeals from a judgment entered in the United States District Court for the Southern District of New York following his plea of guilty before John F. Keenan, *Judge*, convicting him of receiving and selling stolen vehicles, in violation of 18 U.S.C. § 2313 (1994), and of conspiring to do so, in violation of 18 U.S.C. § 371 (1994). Fernandez was sentenced principally to 46 months' imprisonment, to be followed by a three-year term of supervised release, and was ordered to pay $220,000 in restitution. On appeal, he contends that he was entitled to a downward adjustment for acceptance of responsibility and a downward departure for assistance to the government or to the legal system; and he contends that the district court erred in enhancing his sentence for obstruction of justice. Finding no merit in his contentions, we affirm.

## I. BACKGROUND

From June 1992 to November 1993, Fernandez and others participated in a scheme in which they bought stolen cars and trucks in the Bronx, New York, and sold them, often to innocent third parties, through an automobile dealer in New Jersey. The ring would obtain from individuals in the Dominican Republic genuine certificates of origin covering vehicles that had been legitimately exported to that country from the United States; the thieves in the United States would then steal vehicles whose year, make, and model matched those certificates and would alter the stolen vehicles' identification numbers to match the numbers on the certificates.

### A. *Fernandez's Cooperation with the Government*

In November 1993, Fernandez was arrested by the New Jersey State Police in connection with these activities. He soon began to cooperate with the police and the Federal Bureau of Investigation ("FBI"). His cooperation included introducing an FBI undercover agent to individuals in the Bronx from whom Fernandez had purchased stolen vehicles, and, under FBI supervision, traveling to the Dominican Republic to meet with the individuals who provided the certificates of origin. Fernandez's cooperation continued throughout the government's extensive investigation of the car theft ring. The investigation culminated in the execution of numerous search warrants and the indictment and arrests of 29 ring members in the Southern District of New York.

On the eve of those arrests, Fernandez entered into a formal agreement with the government, pursuant to which he agreed to cooperate with the government and to plead guilty to the substantive and conspiracy counts described above. (Letter from United States Attorney's Office to Ira D. London, Esq., dated January 25, 1995 ("Cooperation Agreement" or "Agreement").) The Cooperation Agreement required that Fernandez, *inter alia*, "truthfully and completely disclose all information with respect to the activities of himself and others concerning all matters about which th[e United States Attorney's] Office inquires of him," and "commit no further crimes whatsoever." (Cooperation Agreement at 2.)

The Agreement provided that, if the United States Attorney's Office determined that Fernandez "has provided substantial assistance in an investigation or prosecution, and if he has fully complied with the understandings specified in this Agreement, th[e] Office will file a motion, pursuant to Section 5K1.1 of the Sentencing Guidelines, requesting the Court to sentence Rafael Fernandez in light of the factors set forth in Section 5K1.1(a)(1)-(5)." (Cooperation Agreement at 3.) However, it also provided that

[i]t is understood that, should this Office determine that Rafael Fernandez has not provided substantial assistance in an investigation or prosecution, or has violated any provision of this Agreement, such a determination will release this Office from any obligation to file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines,

but will not entitle Rafael Fernandez to withdraw his guilty plea once it has been entered.

(*Id.* at 4.)

## B. *Fernandez's Breach of the Cooperation Agreement*

The prosecution of the 29 indicted defendants was ultimately divided into three cases, and the government intended to call Fernandez as a witness in two of them. The first trial, at which Fernandez was expected to testify against defendants Fernando Pena and Armando Torres, was scheduled for November 14, 1995, before District Judge Allen G. Schwartz. On November 8, however, Torres's attorney Charles D. Adler requested an *ex parte* conference with Judge Schwartz. In that conference, Adler informed the judge that Fernandez had approached Torres, trying to extort money from him and offering to have Fernandez's attorney "fix" Torres's case. Fernandez had proposed that Torres pay him $10,000, which would supposedly be used by Fernandez's lawyer to bribe Judge Schwartz to sentence Torres to a term of probation rather than imprisonment.

Torres had recorded several of the conversations in which Fernandez laid out this scheme. Adler requested an adjournment of trial and an authorization of funds pursuant to the Criminal Justice Act in order to enhance and transcribe the tapes. He also asked that the substance of his *ex parte* disclosures to the court not be revealed to either Assistant United States Attorney ("AUSA") assigned to the case. On November 8, Judge Schwartz granted an adjournment until January 1996 and so informed counsel for all parties; he initially disclosed the substance of the *ex parte* communication only to the senior management of the United States Attorney's Office.

Immediately after being informed of the adjournment, the two AUSAs in charge of the case, along with an FBI agent, all as yet unaware of Torres's allegations concerning Fernandez, interviewed Fernandez by telephone. They asked Fernandez when he had last seen or spoken to Torres; Fernandez responded, falsely, that he had not seen or spoken to Torres since approximately January 1995. In fact, Fernandez had had conversations with Torres on three occasions in October 1995, which Torres had tape-recorded, during which they discussed the scheme concerning Torres's sentence.

On November 10, Judge Schwartz convened a conference call with, *inter alios,* Adler and AUSA Matthew Fishbein, chief of the United States Attorney's Office's Criminal Division, to discuss the substance of Adler's information. The government had received from Adler four tapes, which it had quickly had translated and transcribed. Fishbein stated that although the current translations were rough, they appeared to "corroborate the version that Mr. Adler gave to your Honor the other day":

> it does appear that the conversation involves a discussion of a payment of money to be, I guess, transferred ultimately to your Honor to get your Honor to give a more lenient sentence to Mr. Torres.

(*United States v. Torres,* 95 Crim. 130, Conference Call Transcript, November 10, 1995 ("Torres Transcript"), at 3.) Fishbein stated that "if . . . in fact, Mr. Fernandez, the informant, is the one who is talking to Mr. Torres here, I think it is almost inconceivable that he would be a witness at trial." (*Id.* at 7.) The court agreed that "the government can't at this point put this witness on the stand, to allow that witness to perjure himself and to participate in continuing this crime that he is beginning." (*Id.* at 18.)

Torres subsequently met with the government and agreed to cooperate. Under government supervision, he made telephone calls to Fernandez that were recorded; he also met with Fernandez in New Jersey and recorded that conversation. In those conversations, Fernandez and Torres again discussed the scheme concerning Torres's sentence. After reviewing these recordings, the government voided its Cooperation Agreement with Fernandez. On the basis of his November 8, 1995 false denials of recent contacts with Torres, Fernandez was arrested and charged with making false statements to federal officers, in violation of 18 U.S.C. § 1001 (1994), a charge that was eventually dismissed. Torres and Pena pleaded guilty to the car theft ring conspiracy, making a trial unnecessary.

The government filed a § 5K1.1 motion on behalf of Torres in light of his "substantial assistance" in the government's investigation of Fernandez, which "enabled the Government to ferret out a duplicitous and deceitful informant." (Letter from United States Attorney's Office to Judge Schwartz in *United States v. Torres,* 95 Crim. 130, dated June 3, 1996, at 3.)

After the government voided Fernandez's cooperation agreement, Fernandez admitted that he had lied to the government in November 1995 when he claimed not to have spoken to Torres since January of that year. He claimed, however, that he had agreed to accept $10,000 from Torres because Torres had been pestering him, and he was only attempting to get Torres "off his back." Fernandez said he had had no intention of bribing Judge Schwartz but merely meant to pay the money to Fernandez's attorney, who would then represent Torres and argue for a favorable sentence. (*See also* Letter from Fernandez's new attorney Michael M. Milner, Esq., to Judge Keenan dated October 14, 1996, at 2 ("Mr. Fernandez ... told Torres that his lawyer had a social relationship with Judge Schwartz, the Judge presiding over Mr. Torres' case, and that if Torres could come up with $10,000 for a retainer for his lawyer, his lawyer would get Mr. Torres a plea bargain which would result in a sentence of a 'bracelet'.").)

### C. *The Sentencing of Fernandez*

Prior to being sentenced, Fernandez moved for an order compelling the government to file a motion pursuant to Guidelines § 5K1.1 for a downward departure. He argued that he was entitled to the departure because the government had already received the benefit of his cooperation and had not been prejudiced by his violation of the Cooperation Agreement. He moved in the alternative for a downward departure pursuant to Guidelines § 5K2.0, arguing that his cooperation had been of extraordinary benefit to the judicial system and had caused him substantial risk and hardship, circumstances that he argued took this case out of the heartland of cooperation cases. Fernandez also objected to the recommendations in the presentence report ("PSR") that the court impose a two-step enhancement of his offense level for obstruction of justice and that the court not grant him a reduction for acceptance of responsibility. At sentencing, Fernandez's counsel conceded before Judge Keenan that Fernandez had lied to the government and that that conduct had damaged Fernandez's credibility.

After considering the parties' arguments and written submissions, the district court ruled against Fernandez on all of the disputed issues. First, the court

decline[d] to direct the government to issue a 5K1.1 letter because the government has pointed out and defense counsel has acknowledged that the defendant lied to the government. . . .

Once the defendant has broken his cooperation agreement by lying to the government, the government can no longer rely on him, and that completely vitiates the cooperation agreement. It would be absurd to require the government to issue a 5K1.1 letter saying that he is entitled to leniency at my hands because he cooperated. It would be absurd to do that.

The court concludes and finds that there is no bad faith on the part of the government in refusing to issue the 5K1.1 letter. Indeed, if they were to issue one I would be highly critical of them, they shouldn't issue a letter like that in a case like this.

(Sentencing Transcript, October 17, 1996 ("S.Tr."), 20–21.) The court also declined to grant a § 5K2.0 departure, stating that it was not presented with a situation that had not been contemplated in the Sentencing Guidelines and that "the whole problem here was created by the defendant by lying to the government." (S.Tr.21.)

The court increased Fernandez's offense level by two steps for obstruction of justice pursuant to Guidelines § 3C1.1, stating,

I see nothing that in any way militates against a[n] ... enhancement for obstruction of justice. [Fernandez] did obstruct justice here. In my view his conduct undermined the very judicial process. It required an adjournment of the trial. All one has to do is read the 35 pages of [the Torres Transcript] before Judge Schwartz.

His conduct completely turned the whole prosecution [of Torres and Pena] into a mass of confusion. What he did so impacted and affected his credibility as a witness that they couldn't use him.

(S.Tr. 21–22.) As to acceptance of responsibility, the court adopted the view set out in the PSR that, although Fernandez had promptly pleaded guilty and had assisted the authorities, his criminal conduct subsequent to his plea, involving an unlawful attempt to influence the sentence of a coconspirator and the making of false statements to the government concerning that conduct, was inconsistent with acceptance of responsibility.

The court sentenced Fernandez to a prison term of 46 months, "the bottom of the guideline [range] . . . because there was a certain amount of cooperation." (S.Tr. 25.)

This appeal followed.

## II. DISCUSSION

On appeal, Fernandez contends that the district court erred in (1) denying his motion for a downward departure pursuant to Guidelines § 5K2.0; (2) denying his motion to compel the government to move for a downward departure pursuant to Guidelines § 5K1.1; (3) denying him a downward adjustment for acceptance of responsibility; and (4) enhancing his sentence for obstruction of justice.

■ The first contention, that Judge Keenan should have granted Fernandez a downward departure pursuant to Guidelines § 5K2.0 for providing assistance "to the judicial system," is not properly before us. A sentencing court's refusal to grant a departure is not appealable unless the court committed an error of law or was unaware of its power to depart. See, e.g., United States v. Brown, 98 F.3d 690, 692 (2d Cir.1996) (per curiam); United States v. Williams, 23 F.3d 629, 636 (2d Cir.), cert. denied, 513 U.S. 1045, 115 S.Ct. 641, 130 L.Ed.2d 547 (1994); United States v. Haynes, 985 F.2d 65, 68 (2d Cir.1993). Fernandez has not pointed out any error of law or any indication that the court believed it lacked the power to depart even if the record had warranted such action.

Fernandez's other contentions are properly before us but provide no basis for reversal. Only the obstruction-of-justice contention warrants extended discussion.

### A. The Enhancement for Obstruction of Justice

■ In challenging the district court's enhancement of his offense level for obstruction of justice, Fernandez states as follows:

After finding that defendant Fernandez's conduct in *lying about his conversations with Torres* required an adjournment of the trial and impacted Fernandez's credibility to the extent that the government could not use him as a witness, the District Court imposed a two point enhancement for Obstruction of Justice.

(Fernandez brief on appeal at 34 (emphasis added).) Fernandez proceeds to argue that the enhancement was inappropriate because, as a matter of law, "for false statements to constitute an Obstruction of Justice they must materially impede or obstruct an official investigation or prosecution" (*id.*, citing Guidelines § 3C1.1 Application Notes 3(g) and 4(b)). He asserts (a) that he made no false statements about "his own role in the offense" (*id.* at 36) and hence did not obstruct the government's investigation or prosecution of his own criminal conduct; and (b) that his false denial of recent contacts with Torres did not "in any way materially impede[ ]" the government's prosecution of Torres and Pena (*id.* at 35).

We reject this argument. If in fact the district court's rationale had been as Fernandez characterizes it, it would present interesting questions with respect to the proper interpretation of Application Notes 3(g) and 4(b) in the circumstances of this case. But Fernandez's lying to the government was not the basis for the court's decision.

Although the government informed Judge Keenan that it was relying solely on Fernandez's false statements to the government to support its sentencing positions, we think it clear that the district court imposed the obstruction-of-justice enhancement because of Fernandez's bribery scheme. The false statements were the basis on which the court refused to compel a motion for departure

pursuant to § 5K1.1 (*see* S.Tr. 20–21 ("de-clin[ing] to direct the government to issue a 5K1.1 letter because . . . the defendant lied to the government"; Fernandez vitiated co-operation agreement "by lying to the government")), as well as the basis on which it refused to depart pursuant to § 5K2.0 (*see* S.Tr. 21 ("the whole problem here was creat-ed by the defendant by lying to the government")); but the court did not mention Fer-nandez's lying as a basis for the obstruction enhancement. Rather, the court found that

> [Fernandez] did obstruct justice here. In my view his conduct undermined the very judicial process. It required an adjourn-ment of the trial. All one has to do is read the 35 pages of [the Torres Transcript] before Judge Schwartz. His conduct com-pletely turned the whole prosecution into a mass of confusion. What he did so impact-ed and affected his credibility as a witness that they couldn't use him.

(S.Tr. 21–22.) The conduct referred to can-not have been Fernandez's false statements to the government. It was not those false denials that required the adjournment of the Torres trial; they had not been uttered when the adjournment was requested and granted. It was not the denials that threw the prose-cution and defense into a posture that threat-ened the integrity of the judicial system, making the government's use of Fernandez as a trial witness "almost inconceivable" (Torres Transcript at 7). And while there was brief mention in the Torres Transcript of the fact that Fernandez had lied to the gov-ernment about his recent conversations with Torres, virtually all of that 35-page tran-script reflected discussion of the ramifica-tions of Fernandez's bribery-related conver-sations with Torres.

Thus, we reject the premise of Fernan-dez's argument to this Court, which is that the obstruction enhancement was granted because of his lying to the government. Plainly the conduct to which Judge Keenan referred was Fernandez's discussions seek-ing $10,000 from Torres, to be paid to a friend of Torres's trial judge who supposedly would then impose a lenient sentence. For the reasons that follow, we see no error in the court's reliance on that ground.

In reviewing a sentence, the appel-late court must "accept the findings of fact of the district court unless they are clearly er-roneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1994); *see, e.g., United States v. Santiago,* 906 F.2d 867, 871 (2d Cir.1990); *United States v. Shoulberg,* 895 F.2d 882, 884 (2d Cir.1990). Thus, the sentencing court's findings as to what acts were performed, what was said, what the speaker meant by his words, and how a listener could reasonably interpret those words will be upheld unless they are clearly erroneous. *See, e.g., id.* at 884; *Unit-ed States v. Stroud,* 893 F.2d 504, 506–07 (2d Cir.1990). A ruling that those facts consti-tute attempted obstruction of justice is a matter of legal interpretation that is to be reviewed *de novo. See, e.g., United States v. Perdomo,* 927 F.2d 111, 118 (2d Cir.1991); *United States v. Stroud,* 893 F.2d at 507. We will not overturn the court's application of the Guidelines to the facts before it unless we conclude that there has been an abuse of discretion. *United States v. Santiago,* 906 F.2d at 871.

The Guideline entitled *"Obstructing or Impeding the Administration of Justice"* provides as follows:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or im-pede, the administration of justice during the investigation, prosecution or sentenc-ing of the instant offense, increase the offense level by 2 levels.

Guidelines § 3C1.1. By its terms, the en-hancement is to be imposed not only for successful obstructions but also for attempts. The reference to conduct "during" the inves-tigation, prosecution, or sentencing of the instant offense means that the enhancement may not properly be imposed for obstructive conduct that preceded the commission of the offense of which the defendant was convicted. *See, e.g., United States v. Perdomo,* 927 F.2d at 118 (ruling that conduct occurring in March 1988 could not be considered to have obstructed prosecution of offense alleged to have occurred in July 1988); *see also United States v. Ford,* 989 F.2d 347, 352 (9th Cir. 1993) ("The plain language of section 3C1.1

makes this provision inapplicable to an offense committed almost a year after the allegedly obstructive conduct t[ook] place.").

In *Perdomo*, we stated that "the instant offense" means the "offense of conviction." *Id.* at 118. The offense of conspiracy, of course, is one that requires at least two actors, and in *United States v. Valdez*, 16 F.3d 1324 (2d Cir.1994), we ruled that the "instant offense" parameter of § 3C1.1 was satisfied where the obstruction consisted of perjury by one conspirator on behalf of his coconspirators. In that case, Wasang Tomas Mock had testified falsely for the defense at a narcotics trial held prior to Mock's being charged with any offense. That trial resulted in a hung jury. Before the second trial, Mock himself was arrested and charged with participating in the conspiracy. At the second trial, Mock and his codefendants, for whom Mock had previously testified falsely, were convicted of conspiracy. The district court applied the obstruction-of-justice enhancement to Mock for, *inter alia*, his false testimony at the first trial. Mock argued that his "false testimony c[ould] not be the basis of an increase because it did not relate to 'the instant offense.'" *Id.* at 1335. We rejected that contention because Mock had "committed perjury while an investigation was ongoing for the conspiracy, and he lied in order to cover up his and his co-conspirators' roles in the conspiracy." *Id.* "[H]is perjury took place during his instant offense, because he was under investigation by the government for his involvement in the conspiracy at the time that he testified at the first trial." *Id.* at 1336.

Several other circuits likewise have concluded that a defendant who has pleaded guilty to or been found guilty of conspiracy may properly have his offense level enhanced pursuant to § 3C1.1 when he has obstructed or attempted to obstruct justice on behalf of a member of the conspiracy. *See, e.g., United States v. Powell*, 113 F.3d 464, 469 (3d Cir.1997) (upholding enhancement for defendant who testified falsely at trial of coconspirator, because "the sentencing guidelines contemplate that an offense may be committed by more than one defendant. *See* U.S.S.G. Ch. 3, Pt. B, Intro. comment ('When an offense is committed by more than one participant....')"); *United States v. Kyle*, No. 94–5894, 1996 WL 397412, at *4 (4th Cir. July 17, 1996) (per curiam) (unpublished disposition) ("the term 'instant offense' is broad enough to encompass a defendant's obstruction of his co-conspirator's case where the defendant's offense of conviction is the identical conspiracy charge for which his coconspirator is being prosecuted"); *United States v. Acuna*, 9 F.3d 1442, 1446 (9th Cir.1993); *United States v. Bernaugh*, 969 F.2d 858, 861 (10th Cir.1992) ("the section 3C1.1 enhancement applies where a defendant attempts to obstruct justice in a case closely related to his own, such as that of a codefendant").

So far as we are aware, only the Seventh Circuit has adopted a contrary rule. *See, e.g., United States v. Partee*, 31 F.3d 529, 532–33 (7th Cir.1994) (obstruction-of-justice enhancement does not apply to refusal to testify at coconspirator's trial because of Circuit precedents defining "instant offense" to mean only the "offense conduct charged in the count of the indictment or information of which the defendant was convicted" (internal quotation marks omitted)). In circuits other than the Seventh, the cases in which the courts have ruled the obstruction-of-justice enhancement improper because the obstructive conduct was aimed at the investigation or prosecution of another person have involved defendants who were not convicted of conspiracy. *See, e.g., United States v. Horry*, 49 F.3d 1178, 1180–81 (6th Cir.1995); *United States v. Bagwell*, 30 F.3d 1454, 1458–59 (11th Cir.1994); *United States v. Woods*, 24 F.3d 514, 516 (3d Cir.1994); *see also United States v. Levy*, 992 F.2d 1081, 1083–84 (10th Cir.1993) (obstruction enhancement not available where "unrelated to" offense of conviction). We follow here the principle we adopted in *Valdez*, that the obstruction-of-justice enhancement may properly be imposed on a defendant convicted of conspiracy who has attempted to obstruct justice on behalf of his partners in the conspiracy.

We thus see no basis for overturning the district court's imposition of the obstruction enhancement on account of Fernandez's bribery scheme. Fernandez and Torres were being prosecuted for their participation in

the same conspiracy. Fernandez has made no suggestion in this Court that it was clearly erroneous for the district court to interpret his tape-recorded conversations with Torres as revealing a bribery scheme. Even defense counsel's characterization of the conversations, to wit, that Fernandez told Torres "that [Fernandez's] lawyer had a social relationship with" the judge, and, that "if Torres could come up with $10,000 for a retainer for his lawyer, his lawyer would" get Torres a favorable sentence (Letter from Michael M. Milner, Esq., to Judge Keenan dated October 14, 1996, at 2), reflects an assurance by Fernandez that a favorable sentence would be secured on the basis of improper considerations. We conclude that the district court's application of the obstruction-of-justice enhancement to Fernandez's scheme to bribe a judge to help his coconspirator was not an abuse of discretion.

## B. Fernandez's Other Contentions

### 1. The Denial of Credit for Acceptance of Responsibility

■ Fernandez contends that even if his offense level was properly enhanced for obstruction of justice, the court was required to grant him a reduction in offense level for acceptance of responsibility because he had fully acknowledged his own participation in the car theft conspiracy, and any obstruction was entirely unrelated. We are unpersuaded.

The Guidelines require the sentencing court to grant a reduction in offense level if the court finds that the defendant has "clearly demonstrate[d] acceptance of responsibility for his offense." Guidelines § 3E1.1. When the defendant has engaged in conduct resulting in an enhancement under § 3C1.1 for obstruction of justice, however, that conduct "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct," and the acceptance-of-responsibility adjustment may not be given unless the circumstances are "extraordinary." Guidelines § 3E1.1 Application Note 4.

■ One factor that the sentencing court may take into account in deciding whether a defendant has accepted responsibility is whether he has voluntarily terminated all criminal conduct. See, e.g., Guidelines § 3E1.1 Application Note 1(b); United States v. Olvera, 954 F.2d 788, 793 (2d Cir.) (reduction may be denied on the basis that the defendant has engaged in continuing criminal conduct), cert. denied, 505 U.S. 1211, 112 S.Ct. 3011, 120 L.Ed.2d 885 (1992). If a defendant commits a second crime after pleading guilty to, and while awaiting sentencing for, a first offense, that "is a relevant consideration in denying the acceptance-of-responsibility adjustment in selecting the sentence for that first offense." United States v. Rodriguez, 928 F.2d 65, 67 (2d Cir.1991). "The second crime refutes the disavowal of future criminal activity implied by the guilty plea to the first crime." Id.

■ The assessment of a defendant's contrition, credibility, and candor is a matter for the sentencing judge, see, e.g., United States v. Rivera, 96 F.3d 41, 43 (2d Cir.1996), and that judge's unique position entitles his determination to "great deference on review," Guidelines § 3E1.1 Application Note 5. Accordingly, the sentencing judge's finding as to whether the defendant has adequately demonstrated an acceptance of responsibility will not be disturbed unless it is "without foundation." See, e.g., United States v. Rivera, 96 F.3d at 43; United States v. Boothe, 994 F.2d 63, 70 (2d Cir.1993).

In the present case, the sentencing court viewed Fernandez's conduct following his plea of guilty as mendacious and criminal activity that was inconsistent with acceptance of responsibility. We cannot conclude that this assessment was without foundation.

### 2. The Government's Refusal To File a § 5K1.1 Letter

■ Fernandez also contends that the district court erred in not compelling the government to make a motion under Guidelines § 5K1.1 for a downward departure based on his substantial assistance during the investigation that led to the indictments. This contention borders on the frivolous.

■ Where a defendant contends that the government has breached a cooperation agreement by refusing to make a § 5K1.1

motion, we will "look to see if the government has lived up to its end of the bargain" and "whether the government acted fairly and in good faith." *United States v. Brechner,* 99 F.3d 96, 99 (2d Cir.1996) (internal quotation marks omitted); *see United States v. Resto,* 74 F.3d 22, 26 (2d Cir.1996); *United States v. Knights,* 968 F.2d 1483, 1486–87 (2d Cir.1992). The government's refusal to make a § 5K1.1 motion is justified where the defendant breached his cooperation agreement in a way that damaged the case in which he was cooperating. *See, e.g., United States v. Brechner,* 99 F.3d at 100 (reversing order that compelled government to make § 5K1.1 motion after defendant had lied to government).

In the present case, Fernandez agreed, *inter alia,* to respond truthfully and completely to all inquiries made of him by the United States Attorney's Office. He also agreed that if that Office determined that he had violated any provision of the Cooperation Agreement, the government would be "release[d] ... from any obligation to file a motion pursuant to Section 5K1.1." Instead of fulfilling his own part of the bargain, Fernandez lied when the AUSAs asked him when he had last spoken to Torres, and he engaged in conduct that so undercut his credibility that the government would have been unable to use him as a witness at trial. We see no breach of contract or lack of good faith in the government's refusal to make a motion for a reduction of Fernandez's sentence pursuant to § 5K1.1 in these circumstances.

■ Finally, we note that even where the government moves for a departure pursuant to § 5K1.1, the sentencing judge retains discretion to decide whether or not to grant such a departure. *See* Guidelines § 5K1.1 (upon such a motion, "the court *may* depart" (emphasis added)); *United States v. Huerta,* 878 F.2d 89, 92 (2d Cir.1989) ("The power to decide the motion [for downward departure under § 5K1.1] ... remain[s] with the court."), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990). The court here stated that a § 5K1.1 motion in the present case would have been an absurdity, indicating that the court would have denied such a

motion. Such a denial would hardly have been an abuse of discretion.

## CONCLUSION

We have considered all of Fernandez's arguments that are properly before us and have found them to be without merit. The judgment of conviction is affirmed.