**UNITED STATES of America**

v.

**Emiro VERGARA, Defendant.**

**No. 90 CR. 44(CSH).**

United States District Court,
S.D. New York.

Aug. 5, 1999.

John E. Auchincloss, U.S. Atty. Office, White Plains, NY, for U.S.

Martin G. Fogelson, New York City, Alexander Eisemann, Goldman & Hafetz, New York City, Alexander E. Eisemann, New York City, for Emiro Vergara.

## MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge.

Defendant Emiro Vergara, awaiting sentence following a plea of guilty to a narcotics charge, moves the Court for an order compelling the government to make a motion on Vergara's behalf pursuant to § 5K1.1 of the United States Sentencing Guidelines ("USSG") and 18 U.S.C. § 3553(e), thereby empowering the Court to make a downward departure from the USSG range and to disregard a mandatory minimum in fashioning defendant's sentence.[1] Defendant asserts that the government's making of such a motion is mandated by the terms of his plea agreement with the government and the substantial assistance the government concedes that Vergara rendered to it, pursuant to that agreement.

The government resists Vergara's motion, arguing that he violated the terms of the plea agreement by failing to appear at his sentencing, and that therefore the government is justified in declining to make a motion on Vergara's behalf.

I conclude that the language of the plea agreement, the undisputed facts, and governing Second Circuit precedent require the Court to grant Vergara's motion.

## I.

In January 1990, defendant was arrested and charged with conspiring with others to sell approximately one kilogram of cocaine to a confidential informant. In February 1990, defendant entered into a plea agreement with the government, pursuant to which he pleaded guilty to the indictment and agreed to cooperate with the government in the investigation and prosecution of his coconspirators.

At the February 15, 1990 plea before this Court, defendant was released from custody after executing a $50,000 personal recognizance bond co-signed by one financially responsible person, and an Advice of Penalties and Sanctions form that, *inter alia*, informed defendant that it was unlawful to knowingly fail to appear for sentencing. The Court also specifically stated to defendant at that time that his failure to keep his promise to appear in court would

---

1. In this narcotics case, Vergara was subject to a five year mandatory minimum sentence.

*See* 21 U.S.C. §§ 846 and 841(b)(1)(B).

subject him to "additional criminal charges" and "would be regarded as a violation of your [plea] agreement ...". Tr. at 25:19–21. Defendant's sentencing date ultimately was set for October 9, 1990.

In April 1990, pursuant to the plea agreement, defendant testified as a government witness during the trial of two co-conspirators, both of whom were convicted.

Subsequent to that trial, defendant failed to maintain contact with the government. Accordingly, a warrant for his arrest was issued on October 4, 1990. On December 5, 1998, defendant, who seems to have been living under an assumed name in the interim,[2] was taken into federal custody in execution of that warrant.

The government concedes, as it must, that Vergara's trial testimony leading to the conviction of two other individuals constituted "substantial assistance" to the government, as that phrase is used in its plea agreement with Vergara, quoted more extensively *infra*. But the government contends that, notwithstanding that substantial assistance, Vergara's failure to appear for sentencing is a violation of the plea agreement, which operates to relieve the government from making a § 5K1.1 and 18 U.S.C. § 3553(e) motion on Vergara's behalf.

Vergara concedes, as he must, that his failure to appear for sentencing constituted a further crime that violated his plea agreement. But Vergara contends that this conduct does not justify the government's refusal to make a motion on his behalf based upon his substantial assistance to the government. Specifically, he asserts that his plea agreement does not contain the language necessary to justify that refusal. At heart, Vergara contends that the government must comply with its contractual obligation to him, expressed in the plea agreement, to make a § 5K1.1 and § 3553(e) motion on his behalf.

## II.

The office of the United States Attorney for this District has drafted and commonly uses two forms of plea agreements. These forms are materially different. The differences depend upon whether the defendant subscribing to the agreement will be cooperating with the government in the investigation or prosecution of another person or persons.

Not every defendant who signs a plea agreement cooperates in that manner with the government. Some defendants would like nothing better than to do so, but they lack sufficient information to make them, in the government's eyes, worthwhile informers. Other defendants have the requisite amount of knowledge, but prefer, for reasons sufficient to themselves, not to cooperate.

For the defendant who pleads but does not cooperate, the government has drafted a plea agreement which typically recites the count or counts to which the defendant will plead; summarizes the maximum prison term the district court could impose under applicable statutes as a result of the plea, together with a description of the possible fines and restitution order; and sets forth the parties' agreement on the applicable USSG sentencing range. Usually this form of plea agreement also recites the government's agreement not to prosecute the defendant on other specified offenses, the defendant's agreement not to commit any further offenses, and the adverse consequences to the defendant if he does so.

The principal difference between the government's plea agreement with a non-cooperating defendant and one who is cooperating is that the government's form of plea agreement with a cooperating defendant, while containing similar opening paragraphs, does not recite the parties'

---

**2.** At oral argument the parties disputed whether Vergara had assumed an alias while he was a fugitive. I do not regard this as a material issue, and consequently required no further evidence or submissions with respect to it.

agreement on the applicable USSG sentencing range. That is because the agreement contemplates the defendant's subsequent assistance to the government, and obligates the government to move on behalf of defendant for a downward USSG departure and relief from any statutory mandatory minimum sentence if in the government's view the defendant renders' such assistance that may be characterized as "substantial." In those circumstances, the government and the defendant alike are content to await future developments that may, as both parties hope for somewhat different reasons, operate to reduce defendant's sentence. The plea agreement with a cooperating defendant also prohibits the defendant from committing any further crimes, and recites the consequences to him if he does so.

It sometimes occurs that these plea agreements give rise to litigation between the government and the subscribing defendant. In the case of a plea agreement with a non-cooperating defendant, the defendant may contend that the government subsequently treated him in a manner contrary to the agreement's letter or spirit. In the case of a plea agreement with a cooperating defendant, where the government subsequently refused to make a § 5K1.1 or § 3553(e) motion, the defendant may claim that the plea agreement obligated the government to do so. That is the contention of the defendant at bar.

### III.

The plea agreement between Vergara and the government (in which the government refers to itself as "this Office") provides in pertinent part:

[T]his Office will inform the sentencing Judge and the Probation Department of (1) this Agreement; (2) the nature and extent of Emiro Vergara's activities with respect to this case; and (3) the full nature and extent of Emiro Vergara's activities cooperation with this Office and the date when such cooperation commenced. In addition, if it is determined by this Office that Emiro Vergara has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, this Office *will,* prior to sentencing, (1) file a motion, pursuant to Section 5K1.1 of the Sentencing Guidelines, advising the sentencing Judge of all relevant facts pertaining to that determination and requesting the Court to sentence Emiro Vergara in light of the factors set forth in Section 5K1.1(a)(1)-(5); and (2) file a motion pursuant to Title 18, United States Code, Section 3553(e), to allow the sentencing Judge authority to impose a sentence below the level established by statute as the minimum sentence.

\*     \*     \*     \*     \*     \*

It is further understood that Emiro Vergara must at all times give complete, truthful, and accurate information and testimony and must not commit any further crimes whatsoever. *Should Emiro Vergara commit any further crimes* or should it be determined that he has given false, incomplete, or misleading testimony or information, or should he otherwise violate any provisions of this Agreement, Emiro Vergara *shall thereafter be subject to prosecution* for any federal criminal violation of which this Office has knowledge, including, but not limited to, perjury and obstruction of justice.

Plea Agreement dated February 6, 1990 at pages 2–3 (emphasis added).

Defendant contends, and the government concedes, that since the date of the Vergara plea agreement, the government has revised its form language for such instruments. Plea agreements currently given to cooperating defendants provide that if the government determines that the defendant "has violated any provision of this Agreement, *such a determination will release this Office from any obligation to file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines,* but will not

entitle [defendant] to withdraw his already-entered guilty plea." Letter Brief of Vergara's counsel dated April 21, 1999, at 3 (emphasis added).

## IV.

■ Recent Second Circuit cases considering plea agreements establish two propositions. First, plea agreements are interpreted under principles of contract law. Second, because prosecutors draft these agreements and enjoy advantages in bargaining power over defendants (to understate the matter), courts will construe plea agreements strictly against the government. These propositions apply whether the plea agreement in question is with a non-cooperating or a cooperating defendant.

The Second Circuit recently dealt with the first of the two plea agreement forms in *In re Altro*, 180 F.3d 372 (2d Cir.1999). The case involved a plea agreement by a non-cooperating defendant who contended that "the spirit" of the agreement relieved him of the obligation to testify subsequently before a grand jury. Judge Cabranes' opinion begins with a discussion that it is useful to quote at some length:

> We have long interpreted plea agreements under principles of contract law, but have noted that plea agreements ... are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain. Our concern for fairness is rooted in an appreciation of the fact that, unlike ordinary contracts, plea agreements call for defendants to waive fundamental constitutional rights, and in an awareness that the Government generally drafts the agreement and enjoys significant advantages in bargaining power. Accordingly, we hold the Government to the most meticulous standards of both promise and performance. In keeping with these general principles, we determine whether a plea agreement has been breached by looking to the reasonable understanding of the parties and by

resolving any ambiguities against the Government.

*Id.* at 374–75 (citations and internal quotation marks omitted).

In *Altro* the Second Circuit rejected defendant's argument because "nothing in the written plea agreement could reasonably be viewed as foreclosing the Government's subpoena of Altro to testify before the grand jury," so that defendant's invocation of the "spirit" of the agreement was precluded by the parol evidence rule. *Id.* at 375–76. But this reasoning reveals the paramount importance of principles of contract law; and the Second Circuit has not hesitated to apply those principles in construing plea agreements against the government.

In *United States v. Gottesman*, 122 F.3d 150 (2d Cir.1997), where the defendant pleaded guilty to tax evasion, the district court's sentence included an order of restitution. The plea agreement, "in no uncertain terms, reserved for Gottesman the right to negotiate a method of payment with the IRS. Court-ordered restitution, with a court-devised payment plan, was not part of the bargain." *Id.* at 153. In that circumstance, the court of appeals vacated the district court's restitution order: "Because the agreement between Gottesman and the government did not contemplate court-ordered restitution, the district court did not have the power to order restitution under 18 U.S.C. § 3663(a)(3)." *Id.* The *Gottesman* court reasoned:

> [P]lea agreements, like contracts, are instruments used to protect the rights and expectations of the parties. Hence, plea agreements get a contract law analysis, tempered with an awareness of due process concerns for fairness and ... adequacy.
>
> As with any contract in which the drafting party has an overwhelmingly superior bargaining position, plea agreements are construed strictly against the Government. Here, the district court

failed to guard Gottesman's expectations. While the Government certainly contemplated that Gottesman would make tax payments, it was also apparent that the terms of payment were yet to be negotiated by Gottesman and the IRS—not imposed by court order.

*Id.* at 152 (citations and internal quotation marks omitted).

In *United States v. Ready*, 82 F.3d 551, 559 (2d Cir.1996), the Second Circuit applied the same principles of contract in rejecting the government's contention that a plea agreement waived the defendant's right to appeal a restitution order ("When construed strictly against the Government and against a background presumption of legality, the waiver language does not allow the inference that the parties intended it to preclude the appeal of an illegally imposed restitution penalty").

The Second Circuit very recently considered a plea agreement with a cooperating defendant, of the sort presented by the case at bar, in *United States v. Padilla*, 186 F.3d 136 (2d Cir.1999). The defendant, Jaime Padilla, pleaded guilty to three drug counts. He then attempted to enter monitored drug transactions with a coconspirator, and gave the government information about another drug dealer. After considering those efforts, the government made a motion on Padilla's behalf under USSG § 5K1.1 and 18 U.S.C. § 3553(e), advising the district court that Padilla provided substantial assistance in the investigation and prosecution of other persons.

Thereafter Padilla failed to appear for his sentencing, and was arrested four months later by New York City police for selling crack cocaine to an undercover officer. Padilla served one year in state custody for that offense, and was then released to federal authorities.

In those circumstances, the government wrote a letter to the district judge, advising that "the Government hereby withdraws its previously filed [§ 5K1.1 and § 3553(e)] motion." 186 F.3d at 139–40. The district judge construed the government's letter as a motion to withdraw its prior motion, granted it over Padilla's objection, and sentenced Padilla in accordance with the Guidelines and the applicable statutory mandatory minimum. Padilla appealed and the Second Circuit reversed.

The court of appeals began its analysis by saying: "[c]ontrolling circuit precedent causes us to conclude that the plea agreement is dispositive of the issues." *Id.* The cases cited for that proposition included *Gottesman* and *Ready*. The court of appeals then turned to the plea agreement in *Padilla*. The agreement contained the same language as that in the case at bar with respect to the government's obligation to file a motion on defendant's behalf in return for substantial assistance in the investigation or prosecution of others. The *Padilla* agreement then provided:

[S]hould this Office determine that Mr. Padilla has not provided substantial assistance in an investigation or prosecution, or has violated any provision of this Agreement, such a determination will release this Office from any obligation to file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), but will not entitle Mr. Padilla to withdraw his guilty plea once it has been entered.

*Id.* at 140–41.

Padilla's appeal succeeded because his agreement with the government was

silent with regard to the *withdrawal* of a Section 5K1.1 and 18 U.S.C. § 3553(e) motion. Further, it specifically recites the consequences if Padilla committed further crimes or otherwise violated the agreement, but the right to withdraw the Section 5K1.1 and 18 U.S.C. § 3553(e) motion is not enumerated as one of such consequences.

*Id.* (footnote omitted) (emphasis added). That omission was decisive; the Second Circuit continued:

Reading the agreement strictly against the Government, as our precedent requires, we conclude that it prohibits the Government from withdrawing the Section 5K1.1 and 18 U.S.C. § 3553(e) motion because *it failed to enumerate specifically* the right to withdraw the motion in the several specific and serious consequences that would follow if Padilla committed further crimes or otherwise violated the agreement.

*Id.* at 141–42 (emphasis added).

■ While *Padilla* considered the government's right to withdraw a motion previously made, the case at bar involves the government's refusal to make such a motion after the defendant has rendered substantial assistance. It cannot be said that *Padilla* squarely controls the instant case. The Second Circuit in *Padilla*, finding extra-circuit support for its conclusion in *United States v. Anzalone*, 148 F.3d 940 (8th Cir.), *vacated and reh'g en banc granted*, 148 F.3d 940, *reinstated and reh'g en banc denied*, 161 F.3d 1125 (1998), also said of that Eighth Circuit case: "Anzalone also reasoned that the Government could not decline to file the motion for a reason unrelated to the defendant's substantial assistance, a question we need not address." 186 F.3d at 142 n. 5.

Accordingly, the precise question posed by the case at bar may be regarded as open in the Second Circuit; but I find it impossible to discern a principled distinction between the rationales of cases such as *Padilla*, *Gottesman* and *Ready* and the facts of Vergara's case. Surely Vergara may summon to his aid those principles of contract law which inform the Second Circuit's recent cases. The bargained-for consideration for the government's § 5K1.1 and § 3553(e) motion was Vergara's provision of "substantial assistance in the investigation or prosecution of another person." The government acknowledges that Vergara provided that assistance. The agreement casts the government's reciprocal obligation to make a § 5K1.1 motion in mandatory terms (in the event of Vergara's substantial assistance, "this Office *will*" file the motion). Thus it would seem that the government must point to some other contractual provision relieving it of its obligation to make the motion if Vergara rendered substantial assistance.

The government says that in failing to appear for his sentence, Vergara committed another crime and breached the agreement. Of course, both these propositions are true; but the government's difficulty under contract law is that the agreement expressly provides for the consequences of that breach: "[s]hould Vergara commit any further crimes," he "shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge." The agreement, although drafted by the government, says nothing about Vergara's forfeiting his right to a § 5K1.1 and § 3553(e) motion previously earned by his substantial assistance to the government. If one is inclined to derive guidance from maxims, *expressio unius, exclusio alterius* and *contra proferentem* come readily to mind. And that is precisely the Second Circuit's *ratio decidendi* in *Padilla*. The government revealed its awareness of the problem by subsequently amending the form of letter agreement to provide explicitly for a release of its § 5K1.1 obligation in such circumstances; but this case must be decided on the basis of the agreement into which it entered with Vergara.

The government contends that, whatever contract law may say, it acted in good faith in refusing the make the motion, and that this is a sufficient basis for denying Vergara's motion. There is, in fact, a line of Second Circuit authority construing plea agreements with cooperating defendants which articulates the concept of governmental good faith. An illustrative case is *United States v. Brechner*, 99 F.3d 96, 99 (2d Cir.1996), where the Second Circuit observed that "the government possesses wide, but not boundless, discretion whether to make a § 5K1.1 downward departure

motion," the determinative test being whether the government "acted fairly and in good faith." *See also United States v. Resto*, 74 F.3d 22, 27 (2d Cir.1996) ("The government's decision not to move for a downward departure was fair, and the prosecutor made it in good faith."). In *United States v. Fernandez*, 127 F.3d 277, 285–86 (2d Cir.1997), the Second Circuit said in an opinion by Judge Kearse:

> Where a defendant contends that the government has breached a cooperation agreement by refusing to make a § 5K1.1 motion, we will look to see if the government has lived up to its end of the bargain *and* whether the government acted fairly and in good faith.

(Citation and internal quotation marks omitted) (emphasis added). This language suggests a two-pronged inquiry, obliging a defendant seeking to compel a § 5K1.1 motion to satisfy both prongs.

There is a certain tension between these principles of fairness and good faith, which the Second Circuit says limit the government's obligation in a § 5K1.1 plea agreement, and the principles of contract law, which the Second Circuit also has held applicable to plea agreements generally. Thus one searches in vain through the works of Professors Williston and Corbin for analyses of a "good faith breach of contract": the term itself is an oxymoron.

I think that the more recent Second Circuit decisions in *Altro* and *Padilla* resolve whatever tension may have existed between contract law and governmental good faith in the context of plea agreements drafted by the government. If a plea agreement, construed strictly against the government, does not specifically justify subsequent governmental conduct adverse to the defendant, that conduct constitutes a breach of the government's contract with him which the courts will not tolerate. The Second Circuit reached that conclusion in *Altro* and again in *Padilla*, and I reach it here.[3] The government could have drafted Vergara's plea agreement to provide that his subsequent criminal act relieved the government of its obligation to make the motion (indeed, the form presently in use says just that); but Vergara's agreement does not, and I construe the contract, as I must, in his favor. Nor is there an inherent unfairness in this result: the government received and profited by the cooperation which Vergara promised to give in exchange for a § 5K1.1 and § 3553(e) motion.

I do not mean to suggest that the "good faith" concept is no longer applicable to cases construing plea agreements. It may apply in contexts not controlled by the language of the agreement, strictly construed against the government. Thus the government reserves the right under the standard agreement with a cooperating defendant to decide whether the defendant's assistance has been substantial; that evaluation is binding so long as the government makes it in good faith.[4]

---

**3.** The government relies on *United States v. David*, 58 F.3d 113, 115 (4th Cir.1995), where the Fourth Circuit held that bail jumping alone was sufficient to relieve the government of its § 5K1.1 obligation, even where the plea agreement "does not [specifically] address the effect [the] defendant's absconding would have on the government's obligations under the agreement." The reported opinion does not recite the wording of the plea agreement, and so one cannot tell whether the case is squarely contrary to the conclusion I reach in the case at bar. In any event, I am not bound by Fourth Circuit authority; and that circuit itself, in *United States v. Dixon*, 998 F.2d 228 (4th Cir.1993), a withdrawal of motion case,

uses a contract law analysis much the same as that articulated by the Second Circuit in its more recent decisions. In *Padilla* the Second Circuit cited and quoted *Dixon* with approval. 186 F.3d at 141–42.

**4.** It is worth noting that in most Second Circuit cases finding that the government acted in good faith in refusing to make a § 5K1.1 motion, the defendant's post-plea misconduct actually prejudiced the government's case against the targets of the defendant's cooperation. *See, e.g., Fernandez*, 127 F.3d at 286 ("The government's refusal to make a § 5K1.1 motion is justified where the defendant breached his cooperation agreement in a

For the foregoing reasons, Vergara's motion is granted. I will not require the government to go through the formality of making the motion which I have concluded it is obligated to make. That motion is deemed made, and I will sentence Vergara accordingly. However, the government is directed to file and serve, at least seven (7) days before the day of sentencing, a letter stating in greater detail the nature and value of Vergara's assistance.

The date, time, and place of sentencing will be set forth in a separate order.

The foregoing is SO ORDERED.

way that damaged the case in which he was cooperating."); *Brechner,* 99 F.3d at 99, 100 ("These lies, though swiftly corrected, seriously undermined Brecher's credibility as a potential government witness," and "provided good faith grounds for [the government's] refusing to move for a downward departure."); *Resto,* 74 F.3d at 26 ("[A] surprise revelation by the defense as to [defendant's] criminal past would have substantially injured the prosecution's case."). That factor is not present in the case at bar, where Vergara's trial testimony against his coconspirators and the latter's convictions preceded Vergara's bail jumping. In *Padilla* the Second Circuit thought it sufficiently important to make the same point: "Padilla's acts could not have affected the quality of his assistance because the Government had dropped the charges against the coconspirator and Taveras had pleaded guilty before Padilla failed to appear for sentencing and sold the two bags of crack." 186 F.3d at 139 n. 2.