**SKR RESOURCES, INC., Plaintiff,**

**v.**

**PLAYERS SPORTS, INC., and Golf Digest/Tennis, Inc., Defendants.**

**No. 95 Civ. 5233 (DAB).**

United States District Court, S.D. New York.

Sept. 30, 1996.

Shadowitz Associates, P.A., Mitchell L. Shadowitz, Boca Raton, FL, for Plaintiff.

Grais & Phillips, Isaac D. Corré, New York City, for Defendant Players Sports, Inc.

## MEMORANDUM AND ORDER

BATTS, District Judge.

Plaintiff SKR Resources, Inc. ("SKR") placed advertisements with Defendant Golf Digest/Tennis, Inc., ("Golf Digest"), the owner of "Golf Digest" and "Golf Shop Operations" magazines, on behalf of Defendant Players Sports, Inc. ("Players"). Players has refused to make cash payment to SKR for the advertisements, claiming that payment was to be covered by trade credits that existed between Players and SKR. SKR's claims against Players include, among others, breach of contract and fraud. Plaintiff claims "Players fraudulently induced SKR to run the ads and SKR suffered to its detriment to the extent that Golf Digest/Tennis is seeking payment from SKR and has received part payment from SKR." (Compl. ¶ 49.)

## I. BACKGROUND

Defendant Players and Plaintiff SKR entered into two barter agreements, each dated December 8, 1994 (together, the "Agreements") for the exchange of golf balls for trade credit. (Compl. ¶¶ 5, 7.) Players agreed to provide 30,000 packs of golf balls to SKR in exchange for trade credit worth $406,500, an amount equal in value to that of the product. (Compl. ¶¶ 7, 8.) The Agreements stipulated that such trade credit could be used to purchase advertising "on a part cash/part trade basis, at rates which [would] be mutually agreed to between [Players] and SKR prior to placement." (Compl. Ex. 1 ¶ 4.)

SKR alleges that on January 23, 1995, Scott Chang, Vice President of Operations at Players, called Chris Corey of SKR and the two negotiated and agreed upon the cash to trade credit ratio as provided in the Agreements. (Pl.'s Mem. Law, Proposed Am. Compl. ¶ 51.) Subsequent to the alleged negotiations, Players requested via facsimile that SKR, acting as a media buying agent, place advertising with Defendant Golf Digest (the "Letter Agreement"). (Compl. ¶¶ 12, 16, 17.) The Letter Agreement states that Players would receive in "trade credits" the listed advertising spots in exchange for golf balls. (Def.'s Mem. Law, Ex. A.) Defendant Players denies that any agreement was

reached regarding the ratio. (Def.'s Reply Mem. Law at 3, n. 2.) Defendant Players also denies that it knew that the advertising was to be paid on a part cash/part trade credit basis, and has refused to render cash payment for this reason. (Compl. ¶ 21.) In the Complaint, Plaintiff alleges four causes of action against Defendant Players: declaratory relief, breach of contract, unjust enrichment, and fraud. Players now moves to dismiss the fraud claim.

## II. DISCUSSION

■ "The elements of actual fraud under New York law are a false representation, scienter, materiality, expectation of reliance, justifiable reliance, and damage." *Congress Fin. Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 469 (S.D.N.Y.1992) (citing *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of MD.*, 715 F.Supp. 578, 585 (S.D.N.Y. 1989), *modified* 768 F.Supp. 115 (S.D.N.Y. 1991)). Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. . . ." Fed.R.Civ.P. 9(b). Additionally, "allegations [of fraud] must be supported by the pleadings *of specific facts tending to show* that, at the time the defendant made the asserted representations and promises, it never intended to honor its stated intentions." *Carlucci v. Owens–Corning Fiberglas Corp.*, 646 F.Supp. 1486, 1491 (E.D.N.Y.1986) (emphasis added) (citing *Songbird Jet Ltd., Inc. v. Amax Inc.*, 581 F.Supp. 912, 924–25) (S.D.N.Y.1984).

### A. Motion to Dismiss

■ "In a motion to dismiss based on Rule 9(b), plaintiff's allegations must be taken as true." *Official Publications, Inc. v. Kable News Co., Inc.*, 775 F.Supp. 631, 636 (S.D.N.Y.1991) (citing *Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986)). Further, "[the] court must read the complaint generously, and draw all inferences in favor of the pleader." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989). When showing a Defendant's false statement of intentions, however, any inference drawn from the nonperformance of a contract is not sufficient to sustain the

Plaintiff's burden. *See Murray v. Xerox Corp.*, 811 F.2d 118, 122 (2d Cir.1987); *Roney v. Janis*, 77 A.D.2d 555, 430 N.Y.S.2d 333, 335 (1980), *aff'd*, 53 N.Y.2d 1025, 442 N.Y.S.2d 484, 425 N.E.2d 872 (1981). District courts in the Second Circuit have repeatedly rejected attempts to convert a breach of contract claim into a fraud claim by merely alleging that a contracting party never intended to fulfill its promise under the agreement. *See, e.g., Strojmaterialintorg v. Russian Am. Commercial Corp.*, 815 F.Supp. 103, 105 (E.D.N.Y.1993) ("a claim predicated on a breach of a contractual arrangement cannot be converted into a fraud claim simply by allegations that a defendant never intended to adhere to its obligations under the agreement"); *Value Time, Inc. v. Windsor Toys, Inc.*, 700 F.Supp. 6, 6 (S.D.N.Y.1988) (alleging that a party intended to breach a contract at the time it entered into the contract does not state a claim for fraud); *Cranston Print Works Co. v. Brockmann Int'l A.G.*, 521 F.Supp. 609, 614 (S.D.N.Y.1981) (noting the rejection of efforts to convert contracts actions into fraud claims based upon allegations that a contracting party never intended to fulfill its promise).

■ Reading the Complaint in a light most favorable to the Plaintiff, Plaintiff has failed to meet the burden of its fraud claim. Plaintiff alleges that the fraud claim is distinct from the contract claim based on when each claim arose, noting that the fraud "arises out of the Defendant's instruction to SKR to place the specified advertisements which were discussed and agreed to some six weeks *after* the contract was signed." (Pl.'s Mem. Law at 1 (emphasis added)). Additionally, Plaintiff points to the Agreements Players entered into with SKR whereby Players agreed to use its credit on a part cash/part trade basis. (Compl. ¶ 44.) Furthermore, Plaintiff alleges that Defendant Players never intended to pay any cash for the advertisements, and as a result, fraudulently induced Plaintiff to run the advertisements. (Compl. ¶¶ 48, 49.) Finally, Plaintiff claims to have relied to its detriment on the Letter Agreement, in which Defendant Players placed the advertising order. (Pl.'s Mem. Law at 2.) In all, these allegations fail to

support the elements of a fraud claim. Specifically, they allege no more than a breach of contract, as they do not allow the inference that Defendant Players acted with a fraudulent intent.

"Under New York Law, fraudulent intent is not demonstrated by evidence of mere nonperformance of a contract." *Murray*, 811 F.2d at 122. Rather, in order to meet successfully the scienter requirement, which effectively distinguishes a fraud claim from a breach of contract claim, Plaintiff must plead circumstances which "give rise to a strong inference" that the defendant had knowledge of the fraudulent acts. *See Shahzad v. H.J. Meyers & Co., Inc.*, 923 F.Supp. 57, 59–60 (S.D.N.Y.1996); *see also Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995); *Cosmas*, 886 F.2d at 12–13. Pleading factual statements with conclusory allegations does not satisfy the requirements of Rule 9(b). *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir.1994). This is precisely the kind of pleading on which Plaintiff relies. Plaintiff alleges that since Defendant Players ordered advertising after having signed the Agreements which called for payment in part trade/part cash, it "knew at the time it requested SKR to run ads that it was not going to pay for the ads." (Compl. ¶¶ 44, 45, 48.) Without additional supporting facts, this does not "give rise to a strong inference" that Defendant Players acted with a fraudulent intent, thus the Complaint, as is, lacks sufficient detail to support the claim of fraud.

## B. Leave to Amend

In opposing the motion to dismiss the fraud claim, Plaintiff requested in the alternative that it be granted leave to amend, and attached as an exhibit a proposed amended Complaint. (Pl.'s Mem. Law, Ex. 1.) "[D]ismissal of a complaint for failure to satisfy Rule 9(b) without granting leave to amend may ... be deemed a reversible abuse of discretion." *Carlucci*, 646 F.Supp. at 1490 (citing *Luce*, 802 F.2d at 56–57). However, if a proposed amended complaint fails to provide needed support, leave to amend may be denied as futile. *See Acito*, 47 F.3d at 55. To be worthwhile, Plaintiff's

amended pleadings need additional facts to support the allegation of intent, though "alleging [with] 'great specificity' is not required, as it cannot be expected that a plaintiff can plead a defendant's state of mind." *Shahzad*, 923 F.Supp. at 59–60 (citing *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987)). Instead, the Complaint must plead facts indicating conscious behavior by the Defendant. *See Cosmas*, 886 F.2d at 13. Specifically, to meet successfully the scienter requirement, Plaintiff must plead circumstances which "give rise to a strong inference" that the Defendant had knowledge of the fraudulent acts. *See Shahzad*, 923 F.Supp. at 59–60; *see also Acito*, 47 F.3d at 52; *Cosmas*, 886 F.2d at 12–13. A strong inference of fraud may be established by "alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Acito*, 47 F.3d at 52. "To allege conscious misbehavior or recklessness the Complaint must link the misleading statement with facts that give rise to the inference that the speaker had a basis for knowing it was false." *Shahzad*, 923 F.Supp. at 60 (citing *Shields*, 25 F.3d at 1129).

The additional facts alleged in the Proposed Amended Complaint relate to the alleged negotiation and agreement on the payment ratio between Scott Chang of Players and Chris Corey of SKR, where it was agreed that Players would pay 57% of the agreed costs in cash, and the remaining 43% using trade credits. (Pl.'s Mem. Law, Proposed Am. Complaint ¶¶ 49, 50, 51.) Subsequent to the alleged negotiation and agreement on the payment ratio, Defendant Players sent the Letter Agreement to Plaintiff, requesting that Players receive in trade credits the listed advertising spots in exchange for golf balls. (Pl.'s Mem. Law, Proposed Am. Complaint ¶ 52; Def.'s Mem. Law, Ex. A) Plaintiff alleges that, at the time Players placed the advertising order, Players knew that SKR expected a portion of the advertising costs in cash and that Players never intended to pay cash. (Pl.'s Mem. Law, Proposed Am. Complaint ¶¶ 56, 57.) Plaintiff suggests that these additional facts permit the inference of a fraudulent

intent, and thus support the allegation of conscious misbehavior in satisfaction of the scienter element of fraud. The Court disagrees.

The additional facts alleged in the Proposed Amended Complaint do not "constitute strong circumstantial evidence of conscious misbehavior or recklessness" and, thus, do not permit a strong inference of fraud. *Acito,* 47 F.3d at 52. Even reading the Complaint generously and drawing all inferences in favor of the Plaintiff, the plain and unequivocal language of the Letter Agreement requesting advertising spots in exchange for trade credits makes no mention of either an earlier agreement on a trade credit/cash ratio or any other obligation to pay cash by Defendant. If anything, this letter is a warning to Plaintiff that Defendant was placing the ads on a trade credit only basis. Thus, the letter is not an indication that Defendant Players fraudulently induced Plaintiff to run the advertisements. Accordingly, Plaintiff's Proposed Amended Complaint fails to provide the needed support to establish the scienter element of fraud.

 Plaintiff's Memorandum of Law and Proposed Amended Complaint also fail to adequately establish that SKR justifiably relied on Players alleged fraudulent misrepresentation in the Letter Agreement. Reliance, which is a crucial element of any fraud claim, must be justifiable under the circumstances. *Royal Am. Managers, Inc. v. IRC Holding Corp.,* 885 F.2d 1011, 1016 (2d Cir. 1989); *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc.,* 758 F.Supp. 908, 916 (S.D.N.Y.1991). Courts have repeatedly rejected claims of justifiable reliance where the representation relates to matters not peculiarly within the Defendant's knowledge and the Plaintiff "has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation." *Mallis v. Bankers Trust,* 615 F.2d 68, 80–81 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *Banque Arabe ET Int'l v. Md. Nat. Bank,* 57 F.3d 146, 156–57 (2d Cir.1995); *Royal Am. Managers,* 885 F.2d at 1016; *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.,* 748 F.2d 729, 737 (2d Cir.1984);

*Congress Fin. Corp.,* 790 F.Supp. at 470–71. Here, the matter of trade credits was not peculiarly within the defendant's knowledge, as the term appears in both of the contracts between the parties and the Plaintiff admits in its pleadings that it negotiated with the Defendant on the subject. (Def's Mem. Law, Ex. A; Pl.'s Mem. Law, Proposed Am. Compl. ¶¶ 49, 50, 51.) Furthermore, although Plaintiff had the means of ascertaining the validity of the representations in the Letter Agreement by contacting the Defendant and inquiring about the trade credits language, it failed to do so. As such, Plaintiff cannot now complain that it justifiably relied on Players misrepresentation and the Court finds, as a matter of law, that any reliance by the Plaintiff under the circumstances was unjustified.

Because Plaintiff's Proposed Amended Complaint fails to plead adequately the required elements of scienter and justifiable reliance, granting Plaintiff leave to amend would be futile. Accordingly, Plaintiff's request for leave to amend is denied.

### III. CONCLUSION

Defendant's Motion to Dismiss is GRANTED. Plaintiff's request for leave to amend is DENIED.

SO ORDERED.