**UNITED STATES of America, Appellant,**

v.

**Milton BRECHNER, Defendant–Appellee.**

**No. 1449, Docket 95–1649.**

United States Court of Appeals,
Second Circuit.

Argued April 19, 1996.

Decided Nov. 1, 1996.

Stanley J. Okula, Jr., Assistant United States Attorney, Brooklyn, NY, (Zachary W. Carter, United States Attorney for the Eastern District of New York, Peter A. Norling, of counsel), for Appellant.

Victor J. Rocco, New York City, (Gordon Altman Butowsky Weitzen Shalov & Wein, New York, N.Y., of counsel), for Defendant–Appellee.

Before: MINER, McLAUGHLIN, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This is an appeal by the government from a sentence imposed by the United States District Court for the Eastern District of New York (Mishler, J.) upon the defendant Milton Brechner in which the court departed downward by reason of the defendant's cooperation.

After the defendant was charged with tax evasion, he and the government entered into a written cooperation agreement which provided that if the United States Attorney's Office determined that Brechner had cooperated fully, provided substantial assistance, and otherwise complied with the terms of the agreement, the government would move for a downward departure on his sentence under § 5K1.1 of the U.S. Sentencing Guidelines. Brechner went to considerable lengths to help the government obtain incriminating evidence against another person, but lied to prosecutors about the extent of his own criminal activities. At sentencing, the Assistant U.S. Attorney declined to move for a downward departure. Brechner moved for specific performance of the agreement. The district court found that the government's refusal was in bad faith and that the plea agreement entitled the defendant to the benefit of such a motion. Accordingly, on imposing sentence, the court departed downward from the level indicated by the Guidelines.

On appeal, the government argues that Brechner's lies justified the prosecutor's refusal to move for a downward departure. We agree that because Brechner breached his cooperation agreement in a way that damaged the case in which he was cooperating the government's refusal to make its promised motion was justified. We therefore vacate and remand for resentencing.

*Background*

Brechner was president of a company that manufactured stuffed toy animals for sale to carnivals. In January 1992, shortly after the government began investigating him, Brechner offered to plead guilty to four counts of income tax evasion. In exchange for his plea, the government agreed not to prosecute

Brechner's company, its affiliates, or his wife or son for their involvement in Brechner's tax fraud schemes. As was later determined, those schemes included at least three sources of unreported income. Most of the unreported income came from payments from one of Brechner's main customers, the Fred Silber Company. Two other sources were Brechner's Asian supplier, Manley Company, and the company that transported Manley's goods to Brechner, Zim Israel Navigation Company. Both of these companies issued inflated invoices to Brechner's company and then kicked back the difference to Brechner.

In May 1992, seeking a downward departure on his sentence, Brechner, through counsel, contacted the Assistant U.S. Attorney in charge of the investigation and offered to provide information about bribes he had paid to a corrupt bank officer. The Assistant expressed interest and arranged a formal proffer session on June 12, 1992, at which Brechner gave government representatives the details of his payments to the bank officer and the tax evasion scheme involving Fred Silber. Brechner's lawyer also advised the government that Brechner had received approximately $500,000 in unreported income from his overseas supplier, Manley. The payments from Zim Israel, however, were never mentioned. The district court later found that Brechner received almost $5 million dollars in income from Fred Silber, $50,000—$100,000 from Manley and about $200,000 from Zim Israel.

On August 12, 1992, Brechner and the Assistant executed a written cooperation agreement, which provided that "Milton Brechner will provide truthful, complete, and accurate information, and will cooperate fully with the [U.S. Attorney's] Office." According to the agreement, this cooperation would include debriefings "concerning his involvement in and knowledge of all criminal activities," participating in undercover work, and testifying at proceedings upon request.

In exchange for Brechner's cooperation, the government agreed to move for a downward sentencing departure under § 5K1.1 of the United States Sentencing Guidelines "[i]f the [U.S. Attorney's] Office determines that the defendant has cooperated fully, provided substantial assistance to law enforcement authorities, and otherwise complied with the terms of this agreement." The agreement further provided that, in connection with the sentencing departure, "it is understood that the [U.S. Attorney's] Office's assessment of the value, truthfulness, completeness, and accuracy of the cooperation shall be binding upon [Brechner]."

In the following paragraph, the agreement cautioned that

Milton Brechner must at all times give complete, truthful, and accurate information and testimony.... Should it be judged by the [U.S. Attorney's] Office that the defendant has failed to cooperate fully, has intentionally given false, misleading, or incomplete information or testimony ... or has otherwise violated any provision of this agreement, the defendant will not be released from his plea of guilty but this Office will be released from its obligation under this agreement ... to file the motion [for downward departure].

After signing the agreement, Brechner participated actively in the government's bribery investigation of the bank officer, who by this time had retired from the bank and apparently was employed as a consultant by Brechner. For over a year, Brechner arranged meetings with him about once a month, under audiotape and videotape surveillance, at which Brechner attempted, with limited success, to elicit incriminating statements from the bank officer about the bribes he had taken. In September 1993, the Assistant informed Brechner's attorney that the bank officer would be arrested.

Two months later, in November 1993, the Assistant scheduled a debriefing session with Brechner. At the debriefing, Brechner was asked whether he had received kickbacks from Manley and Zim. He denied receiving any such payments. Brechner's lawyer then asked to interrupt the session so that he could speak with his client in private. After a break, Brechner acknowledged his receipt of payments from both Manley and Zim. The Assistant said he would give Brechner a "fresh start," and Brechner proceeded to provide details of the Manley and Zim kick-

backs. This was Brechner's last meeting with government representatives.

In April 1994, the Assistant informed Brechner's counsel that he was not inclined to move for a downward departure because of Brechner's misrepresentations and the fact that it would be difficult to prosecute the bank officer with Brechner as the sole witness in the case.

At sentencing, the government declined to move for a downward departure; Brechner moved to compel the § 5K1.1 motion, alleging prosecutorial bad faith. The district court held a hearing after which Judge Mishler found that Brechner "cooperated fully and completely" and that his "substantial assistance to the investigation was sufficient to warrant a § 5K1.1 motion" despite his false statements. The district court concluded that the government's refusal to move for a downward departure had been in bad faith and granted the motion for specific performance of a downward departure for substantial assistance. The district court also departed downward for "family ties and responsibility" under § 5H1.6, which is not contested on appeal. Based on the combined effect of these two downward departures, Judge Mishler sentenced Brechner to five years probation.

### Discussion

■ Although federal prosecutors have considerable discretionary control over whether to move, under § 5K1.1, for a downward departure by reason of cooperation, that discretion is by no means unlimited. As the Supreme Court made clear in *Wade v. United States*, 504 U.S. 181, 185–86, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992), even defendants who have no cooperation agreements are entitled to assurance that the government's motion is not withheld for some unconstitutional reason. *See United States v. Leonard*, 50 F.3d 1152, 1157 (2d Cir.1995). Defendants who have made an agreement with the government are entitled to a " 'more searching' review," *United States v. Kaye*, 65 F.3d 240, 243 (2d Cir.1995) (quoting *Leonard*, 50 F.3d at 1157). In such cases we look to see "if the government has lived up to its end of the bargain." *United States v. Knights*,

968 F.2d 1483, 1486 (2d Cir.1992). We inquire also whether the government acted fairly and in good faith. *United States v. Resto*, 74 F.3d 22, 26 (2d Cir.1996).

■ Brechner contends he did not receive the benefit of his bargain essentially because he was promised a § 5K1.1 letter if he cooperated satisfactorily, which he did, but was denied the letter. We find no merit in Brechner's claim.

Under the agreement Brechner signed, the government's § 5K1.1 motion was contingent on Brechner's having "cooperated fully, provided substantial assistance to law enforcement authorities, and otherwise complied with the terms of this agreement." Those terms included that Brechner "provide truthful, complete, and accurate information." Furthermore, the agreement expressly stated that the government would be released from its obligation to file the § 5K1.1 motion if Brechner had "intentionally given false, misleading, or incomplete information." By falsely denying his receipt of kickbacks from Zim and Manley, Brechner breached his obligations under the agreement. According to the terms of the agreement, the government was expressly entitled to withhold the letter in those circumstances.

The district court found that, because Brechner "corrected his misstatements" when he subsequently admitted the kickbacks, the breach was not material. The court characterized Brechner's initial lies as "trivial defects" that did not prejudice the government, and thus held that they could not constitute a good faith basis for refusing to make the § 5K1.1 motion. We disagree.

These lies, although swiftly corrected, seriously undermined Brechner's credibility as a potential government witness. As we have previously explained, a cooperating defendant's truthfulness about his own past conduct is highly relevant to the quality of his cooperation. *Resto*, 74 F.3d at 26. By lying to the prosecutor *during the period of his cooperation* about his own criminal involvement, Brechner made it impossible for the government to argue at any future trial that, despite his past sins, Brechner had acknowledged his guilt, turned over a new leaf and

cooperated in a truthful and trustworthy manner. The disclosure of Brechner's lies to the bank officer's defense counsel under *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), would have brought on harsh cross-examination and a powerful argument that Brechner was no more trustworthy as a cooperating witness than he had been as a crook. Brechner's swift correction would not cure the problem, as it was obviously due not to honesty but to his attorney's warning about Brechner's self-interest. Because Brechner would be the sole witness, his lies created a serious problem for the government's contemplated prosecution of the bank officer and provided good faith grounds for refusing to move for a downward departure.

Brechner points out that the government knew when it made the cooperation agreement that a prosecution of the bank officer would be a single witness case based on the testimony of a convicted tax cheat. He contends that the government's refusal to make the § 5K1.1 motion because of concerns about the credibility of Brechner's testimony was thus improperly based on dissatisfaction with a condition known to exist at the time of the bargain. *See Knights,* 968 F.2d at 1488 (holding that in refusing to make a § 5K1.1 motion, government may not rely on circumstances of which it was aware at time of cooperation agreement). This argument, however, ignores the fact that at the time of the agreement the government did not know that Brechner would lie during cooperation, further detracting from his credibility. In addition, the agreement expressly sets forth that a defendant's intentionally false statements will release the government from its obligation to perform. Thus, to the extent that the government anticipated a lack of truthfulness from its potential witness, the agreement unambiguously places the burden of that untruthfulness on Brechner.[1]

We do not imply that in some circumstances the government's refusal to make a § 5K1.1 motion after substantial cooperation in an investigation might not be found to be in bad faith. Here, however, the government's decision was reasonable. *Cf. United States v. Pollack,* 91 F.3d 331 (2d Cir.1996) (Defendant who agreed to provide complete, truthful and accurate information was not under open-ended duty to volunteer all information, however attenuated its connection to the basis of his plea, but where government was reasonably and honestly dissatisfied because of belief defendant lied in response to direct questions about criminal acts, refusal to give § 5K1.1 letter was justified.). The government was within its rights in refusing to move for a downward sentencing departure.

### Conclusion

We vacate the sentence of the district court and remand for resentencing.

---

1. Brechner's arguments of waiver and estoppel are also unavailing. The government did not waive its right to refuse to make the § 5K1.1 motion by telling Brechner he could have a "fresh start" and continuing to question him for an hour. In the first place, the invitation to have a "fresh start" was ambiguous. It did not necessarily mean that Brechner would suffer no consequences from having lied; it might have meant nothing more than that the prosecutor would allow Brechner to continue rather than immediately terminating Brechner's opportunity to gain the benefits of the agreement. The further questioning was also necessary to determine whether the lies were material.

While there may well be circumstances in which the government's conduct towards a cooperating witness after the witness's breach of the agreement will prevent the government from later relying on that breach to claim that its obligations were nullified, merely stating that Brechner would have a "fresh start," followed by some brief further questioning does not have this effect. Brechner suffered no prejudice from the "fresh start"; nor was there want of good faith in the prosecutor's conduct toward Brechner. Indeed, no further cooperation was sought after the incident.