UNITED STATES of America,

v.

Elizabeth **TRUESDALE**, Defendant.

No. 00 Cr. 106(SHS).

United States District Court,
S.D. New York.

April 21, 2003.

John H. Jacobs, New York City, for Defendant.

Marcia Cohen, David M. Rody, Assistant U.S. Attorney, Mary Jo White, United States Attorney, New York City, for U.S.

## OPINION AND ORDER

STEIN, District Judge.

Defendant Elizabeth Truesdale brings this motion for a hearing to determine whether the Government acted in bad faith and in contravention of an alleged oral cooperation agreement with Truesdale by failing to file a motion on her behalf pursuant to U.S.S.G. § 5K1.1 requesting a downward departure from the Sentencing Guidelines based on her substantial assistance to the Government in the investigation and prosecution of another person. Because no written cooperation agreement existed and because Truesdale is not entitled to a hearing solely on the basis of an alleged oral agreement, her motion for a hearing is denied.

## I. BACKGROUND

Elizabeth Truesdale was arrested in early 2000 and was indicted shortly thereafter for conspiring to distribute and possess with intent to distribute Dilaudid, a controlled substance, in violation of 21 U.S.C. § 846. On June 23, 2000, Truesdale and her attorney met with representatives of the Government in the U.S. Attorney's Office for the Southern District of New York where Truesdale provided the Government with information and responded to questions in regard to criminal wrongdoing by herself and others. (Gov't Letter, Mar. 10, 2003 at 3.) Thereafter, Truesdale and her counsel met with the Government in similar sessions, known as "proffer" sessions, on at least three other occasions. (*Id.*) In these interviews, Truesdale described her own conduct and the conduct of others in connection with the charged Dilaudid conspiracy and other matters. (*Id.*)

On November 20, 2000, Truesdale pled guilty to the sole count in the indictment without the benefit of a written plea agreement. Before the plea allocution took place, the Government provided Truesdale with a letter pursuant to *United States v. Pimentel*, 932 F.2d 1029 (2d Cir.1991), setting forth the Government's position with respect to the application of the United States Sentencing Guidelines to defendant's case.

Both parties agree that Truesdale never entered into a written cooperation agreement or plea agreement with the Government. However, defendant maintains that in the proffer sessions and through conversations with her counsel, an oral cooperation agreement was entered into, obligating the Government to move for a downward departure from the Sentencing Guidelines pursuant to U.S.S.G. § 5K1.1.

The Government asserts that no such oral agreement existed at any time. It

points to the written agreements that Truesdale and her counsel signed prior to each proffer session, providing that: the proffer agreement "is not a cooperation agreement"; the Government "does not agree" to make any motion on the defendant's behalf or enter into any agreement with her, and "makes no representation" concerning the likelihood of such an agreement; and the defendant agrees that no "understandings, promises, agreements, and/or conditions" will be entered into "unless in writing and signed by all parties." (Gov't Letter, Apr. 12, 2003 at 8–9.)

## II. DISCUSSION

Because no written cooperation agreement was ever executed by the parties, Truesdale is not entitled to a hearing to determine whether the Government acted in "bad faith" in not granting her a § 5K1.1 letter.

■ The United States Court of Appeals for the Second Circuit has determined that where a written plea agreement provides that the Government intends to file a § 5K1.1 motion for a downward departure due to a defendant's cooperation and substantial assistance in prosecuting another person, the Court may review the Government's ultimate decision not to file such a motion "to determine whether [the Government] has acted in 'good faith.'" *United States v. Leonard*, 50 F.3d 1152, 1157 (2d Cir.1995) (citing *United States v. Knights*, 968 F.2d 1483, 1486–87 (2d Cir.1992); *United States v. Rexach*, 896 F.2d 710, 713–14 (2d Cir.1990), *cert. denied*, 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990)). *See also United States v. Kaye*, 65 F.3d 240, 243 (2d Cir.1995) *rev'd on other grounds*, 140 F.3d 86 (2d Cir.1998) ("Those defendants who have signed agreements in which the government promised to make a 5K1.1

motion in exchange for substantial assistance are entitled to a 'more searching' review [than those who have not cooperated pursuant to a plea agreement] of a claim that the government should have, but did not, make such a motion.") (*quoting Leonard*, 50 F.3d at 1157). Thus, where a defendant has entered into a written cooperation agreement with the Government, a court may "look to see 'if the government has lived up to its end of the bargain,'" *United States v. Brechner*, 99 F.3d 96, 99 (2d Cir.1996) (quotation omitted) and "whether the government acted fairly and in good faith," *id.* (*citing United States v. Resto*, 74 F.3d 22, 26 (2d Cir.1996)).

■ However, in a situation such as Truesdale's, where no written plea or cooperation agreement existed, the Government's failure to make a § 5K1.1 motion can be challenged only if defendant makes a "substantial threshold showing" of an "unconstitutional motive"—such as the race or religion of the defendant—or a lack of a rational relationship to a legitimate government objective. *Wade v. United States*, 504 U.S. 181, 185–86, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992); *see also Leonard*, 50 F.3d at 1157 ("In the absence of a plea agreement, a court may review a prosecutor's decision whether to file a 5K1.1 motion only to determine whether it was based on an unconstitutional motive."); *United States v. Jacobs*, 914 F.Supp. 41, 43 (E.D.N.Y.1995).

Here, Truesdale has made no "substantial threshold showing"—indeed, she does not even purport to have made any showing whatsoever—of an unconstitutional motive, nor can this Court say that the government's failure to move pursuant to U.S.S.G. § 5K1.1 was not rationally related to a legitimate government purpose.

Truesdale relies heavily on *United States v. Leonard,* 50 F.3d 1152 (2d Cir. 1995) in support of her contention that she is entitled to a "bad faith" hearing notwithstanding the absence of a written cooperation agreement. However, her reliance on *Leonard* is misplaced.

In *Leonard,* the defendant entered into an oral plea agreement with the Government shortly after his arrest. Pursuant to that agreement, he was to assist the Government in its investigation of his co-conspirators. *Leonard,* 50 F.3d at 1154–55. However, during the period of cooperation, the prosecutor sent the defendant a draft written plea agreement, which defendant and his attorney signed, and which provided that:

> If the [U.S. Attorney's] Office determines that [Leonard] has cooperated fully, provided substantial assistance to law enforcement authorities and otherwise complied with the terms of this agreement, the Office will file a motion with the sentencing court ... [that] will permit the court, in its discretion, to impose a sentence below the applicable sentencing guideline range.

*Id.* at 1155.

During a proffer session a short time later, the Government determined that Leonard had breached his agreement in various ways, and subsequently notified defense counsel that it "would not execute the draft plea agreement." *Id.* Leonard ultimately pled guilty and sought to compel the Government to make a § 5K1.1 motion on his behalf. The Government opposed that application by asserting, among other things, that no binding plea agreement existed.

The Second Circuit found that a binding plea agreement did in fact exist and remanded the case to the district court to "hold an evidentiary hearing to determine whether the government acted in good faith." *Id.* at 1157. The Second Circuit ordered the hearing upon a finding that the standards governing written plea agreements governed the case. *Id.* at 1157. This Court finds that while the Court in *Leonard* recognized the existence of an oral agreement—a point that Truesdale now stresses—the Second Circuit's decision to permit a "bad faith" hearing was based on the existence of the *written* agreement between the Government and Leonard that set forth the explicit terms of Leonard's cooperation. *Id.* Accordingly, *Leonard* does not stand for the proposition that an oral cooperation agreement alone is sufficient to trigger a "bad faith" hearing with respect to the Government's refusal to make a § 5K1.1 motion.

## III. CONCLUSION

Because there was no written cooperation agreement between Truesdale and the Government, a "bad faith" hearing is not warranted. Defendant's motion is therefore denied.